1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                           17 CR 127 (KMW) (BCM)

5  STEVEN SIMMONS,

6                  Defendant.

7  ------------------------------x

8                                  New York, N.Y.
                                   October 30, 2017
9                                  10:40 a.m.

10

   Before:
11
                        HON. BARBARA C. MOSES,
12
                                     Magistrate Judge
13

14                        APPEARANCES

15  JOON H. KIM
        Acting United States Attorney for the
16      Southern District of New York
   BRENDAN FRANCIS QUIGLEY
17      Assistant United States Attorney

18  MIEDEL & MYSLIWIEC
        Attorneys for Defendant
19  BY:  FLORIAN MIEDEL

20

21

22

23

24

25

```
 1                    (Case called)

 2                    THE DEPUTY CLERK:  Counsel, state your name for the

 3     record.

 4                    MR. QUIGLEY:  Good morning, your Honor.  Brendan

 5     Quigley for the United States, joined by Special Agent Mike

 6     Savona of the FBI.

 7                    THE COURT:  Good morning.

 8                    MR. MIEDEL:  Good morning.  Frank Miedel for

 9     Mr. Simmons.

10                    THE COURT:  Good morning, Mr. Miedel.

11                    Good morning, Mr. Simmons.

12                    THE DEFENDANT:  Good morning.

13                    THE COURT:  I understand we are here for a change of

14     plea.

15                    Mr. Miedel, I understand Mr. Simmons, having

16     previously pleaded not guilty, is now prepared to plead guilty

17     to Count One of the superseding indictment.  Is that correct?

18                    MR. MIEDEL:  That is correct.

19                    THE COURT:  Mr. Simmons, I'm Magistrate Judge Moses.

20     I have before me a document entitled Consent to Proceed Before

21     a United States Magistrate Judge on a Felony Plea Allocution.

22     This appears to be your signature down at the bottom.

23                    Did you sign that form?

24                    THE DEFENDANT:  Yes, your Honor.

25                    THE COURT:  What this form says is that you know you
```

1    have the right to have your plea taken by a United States

2    district judge, but you're agreeing to have your plea taken by

3    a magistrate judge, which is what I am.

4         As a magistrate judge, I have the authority to take

5    your plea with your consent.  You are entitled to all the same

6    rights and protections as if you were before a district judge,

7    and if you are found guilty, you'll be sentenced by a district

8    judge.

9         So, before you signed the consent form, did your

10   attorney explain that to you?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Do you wish to proceed with your plea in

13   my courtroom today?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  Very well.  I will accept your consent.

16   As I discussed with your attorney, sir, I have been informed

17   that you wish to change your plea and enter a plea of guilty as

18   to the charges alleged against you in Count One of the

19   superseding indictment.

20        Is that correct?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  Now, before deciding whether to accept

23   your guilty plea, I need to ask you certain questions.  It's

24   important that you answer my questions honestly and completely.

25        The purpose of these proceedings is to make sure that

1    you understand your rights, to make sure that you are pleading

2    guilty of your own free will, and to make sure that you're

3    pleading guilty because you are guilty and not for some other

4    reason.

5            Do you understand what I'm saying?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  If you don't understand any question I ask

8    you or if you want at any time to consult with your attorney,

9    please let me know, and I will give you the time to do so,

10   because it is important that you understand every question

11   before you answer it.

12           I will ask Mr. Snell, my courtroom deputy, to swear

13   the defendant.

14           (Defendant sworn)

15           THE COURT:  Mr. Simmons, you're now under oath.

16           Do you understand that if you answer any of my

17   questions falsely, you could be prosecuted for perjury?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Thank you.

20           Give us your full name, please.

21           THE DEFENDANT:  Steven Mark Simmons.

22           THE COURT:  How old are you?

23           THE DEFENDANT:  Forty-eight.

24           THE COURT:  Are you a United States citizen?

25           THE DEFENDANT:  I'm sorry?

1          THE COURT:  Are you a United States citizen?

2          THE DEFENDANT:  Yes, I am.

3          THE COURT:  Did you graduate college?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Any graduate school?

6          THE DEFENDANT:  No, ma'am.

7          THE COURT:  When did you graduate college?

8          THE DEFENDANT:  1991.

9          THE COURT:  With a bachelor's degree?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  Have you recently or are you currently

12    under the care of a doctor, a psychiatrist, or a psychologist

13    for any reason?

14         THE DEFENDANT:  No, ma'am.

15         THE COURT:  Do you have any condition that affects

16    your ability to see or to hear?

17         THE DEFENDANT:  No, ma'am.

18         THE COURT:  Do you have any condition that affects

19    your ability to think or to understand or to make decisions on

20    your own behalf?

21         THE DEFENDANT:  No, ma'am.

22         THE COURT:  In the last 24 hours, have you taken any

23    drugs, medicine, or pills that affect your mental processes,

24    whether or not prescribed by a doctor?

25         THE DEFENDANT:  No, ma'am.

```
1              THE COURT:  In the last 24 hours, have you had any
2    alcoholic beverages?
3              THE DEFENDANT:  No, ma'am.
4              THE COURT:  Is your mind clear today?
5              THE DEFENDANT:  Yes, ma'am.
6              THE COURT:  Do you understand what is happening in
7    this proceeding?
8              THE DEFENDANT:  Yes, ma'am.
9              THE COURT:  Does either counsel have any objection to
10   the defendant's competence to plead today?
11             MR. QUIGLEY:  No, your Honor.
12             MR. MIEDEL:  No, your Honor.
13             THE COURT:  Mr. Simmons, have you received a copy of
14   the superseding indictment?  That's the document that contains
15   the charges against you.
16             THE DEFENDANT:  Yes, ma'am.
17             THE COURT:  Have you read it?
18             THE DEFENDANT:  Yes, ma'am.
19             THE COURT:  Do you want me to read it to you?
20             THE DEFENDANT:  No, ma'am.  Thank you.
21             THE COURT:  Thank you.
22             Do you understand what it says you did?
23             THE DEFENDANT:  Yes, ma'am.
24             THE COURT:  Have you had time to talk to your attorney
25   about the charges and about how you wish to proceed?
```

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Has your attorney told you the

3   consequences of pleading guilty?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Are you satisfied with your attorney's

6   representation of you so far?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  I'm now going to explain certain

9   constitutional rights that you have.  These are rights that you

10  will be giving up if you enter a guilty plea.  Please listen

11  carefully to what I'm going to tell you.  If you don't

12  understand something, stop me.  And either your attorney or I

13  will explain the issue more fully.

14          Under the Constitution and laws of the United States,

15  you have a right to plead not guilty to all of the charges

16  against you.

17          Do you understand that?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  If you plead not guilty, you'll be

20  entitled under the Constitution to a speedy and public trial by

21  jury of those charges.  At trial you would be presumed

22  innocent.

23          The government would be required to prove you guilty

24  beyond a reasonable doubt before you could be found guilty.

25  You could not be convicted unless a jury of 12 people agreed

1   unanimously that you are guilty beyond a reasonable doubt.

2           Do you understand that?

3           THE DEFENDANT: Yes, ma'am.

4           THE COURT: If you went to trial, then at that trial

5   and at every stage of the case, you would have the right to be

6   represented by an attorney. If you could not afford one, an

7   attorney would be appointed to represent you at the

8   government's expense.

9           Even if you retained private defense counsel but then

10   ran out of money, an attorney would be appointed to continue to

11   represent you. You would be entitled to an attorney all the

12   way through trial, not just for a guilty plea. So your

13   decision to plead guilty should not depend on whether you can

14   afford a lawyer.

15           Do you understand that?

16           THE DEFENDANT: Yes, ma'am.

17           THE COURT: During trial, the witnesses for the

18   prosecution would have to come to court and testify in your

19   presence where you could see them and hear them and your lawyer

20   could cross-examine them.

21           If you wanted, your lawyer could offer evidence on

22   your behalf as well. You would be able to use the Court's

23   power, known as subpoena power, to compel witnesses to come to

24   court to testify even if they didn't want to come.

25           Do you understand that? Mr. Simmons?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  If you were convicted at trial, you would

3     have the right to appeal that verdict to a higher court.

4          Do you understand that?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  As I said before, you have the right to

7     plead not guilty.  Even today, although you came to court for

8     the purpose of entering a guilty plea, you have the right to

9     change your mind, persist in your not guilty plea, and to

10    proceed to trial.

11         But if you do plead guilty and if the Court accepts

12    your plea, you will give up the right to a trial and the rights

13    that go with it that I just described to you.  If you plead

14    guilty, there won't be any trial.  All that will remain to be

15    done will be to impose a sentence.

16         Now, you and the government will be allowed to make

17    certain arguments about what sentence you should get, but there

18    won't be any trial to determine whether you are guilty or

19    not guilty of the charges to which you plead guilty.

20         Do you understand that?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  Do you also understand that the decision

23    as to the appropriate sentence in your case would be entirely

24    up the to sentencing judge, not me, not the prosecutor, not

25    your lawyer, and that the sentencing judge will be limited only

1    by what the law requires?

2                THE DEFENDANT:  I do.

3                THE COURT:  That means that even if you are surprised

4    or disappointed by your sentence, you will still be bound by

5    your guilty plea, and you won't be able to take it back.

6                Do you understand that?

7                THE DEFENDANT:  Yes, ma'am.

8                THE COURT:  If you do plead guilty, you're also giving

9    up your right not to incriminate yourself, I'll ask you

10   questions about what you did in order to satisfy myself that

11   you're actually guilty, and you'll have to answer those

12   questions truthfully.

13               So, by pleading guilty, you will be admitting what

14   lawyers call your factual guilt as well as your legal guilt.

15               Do you understand that?

16               THE DEFENDANT:  Yes, ma'am.

17               THE COURT:  Count One of the superseding indictment

18   charges you with conspiring to commit securities fraud and wire

19   fraud in violation of Title 18 of the U.S. Code, Section 371.

20               I'm going to ask the assistant U.S. Attorney,

21   Mr. Quigley, to state the elements of the charge.

22               The elements, sir, are the things the government would

23   have to prove beyond a reasonable doubt if you went to trial.

24               Mr. Quigley.

25               MR. QUIGLEY:  Thank you, your Honor.

1          With respect to the conspiracy charge, the government

2     would have to prove four elements:

3          First, that two or more persons entered the unlawful

4     agreement charged in the indictment; second, that the defendant

5     knowingly and willfully became a member of the conspiracy;

6     third, that at least one of the members of the conspiracy

7     knowingly committed an overt act charged in the indictment; and

8     fourth, that the overt act was committed to further some

9     objective of the conspiracy.

10          With respect to the underlying offenses that are the

11     object of the conspiracy, securities fraud and wire fraud, with

12     respect to securities fraud, the government would have to prove

13     that in connection with the purchase or sale of a security, the

14     defendant or one of his coconspirators employed a device,

15     scheme, or artifice to defraud or made an untrue statement of a

16     material fact or made a statement of immaterial fact that made

17     what was said under the circumstances misleading, or engaged in

18     an act, practice, or course of business that operated or would

19     operate as a fraud or deceit upon a purchaser or seller.

20          Second, that the defendant acted willfully and

21     knowingly the with intent to defraud; and third, that the

22     defendant or one of the coconspirators used or caused to be

23     used any means or instrument of transportation or communication

24     in interstate commerce with use of the mails.  That's

25     securities fraud.

1          With respect to wire fraud, there are three elements:

2     First, there was a scheme or artifice to defraud or to obtain

3     money or property; second, that the defendant knowingly and

4     willfully participated in this scheme or artifice to defraud,

5     that with knowledge of its fraudulent nature and specific

6     intent to defraud; and third, that in the execution of the

7     scheme, the defendant or one of his coconspirators used

8     facilities in interstate commerce, interstate wires.

9          THE COURT:  Is there a venue element as well?

10          MR. QUIGLEY:  Yes, your Honor.  The government would

11    have to prove by a preponderance of the evidence that the overt

12    act occurred in the Southern District of New York.

13          THE COURT:  Thank you, Mr. Quigley.

14          Mr. Simmons, I'm now going to tell you the maximum

15    possible penalty for the crime charged in Count One.  The

16    maximum means the most that could possibly be imposed.  It does

17    not mean that this is necessarily what you will receive, but by

18    pleading guilty, you are exposing yourself to the possibility

19    of receiving any punishment or combination of punishments up to

20    the maximum that I'm about to describe.

21          Do you understand that?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  The maximum term of imprisonment for the

24    crime charged in Count One is five years, five years in prison,

25    which could be followed by up to three years of supervised

1    release.

2           Supervised release means that after release from

3    prison, you would be subject to supervision by the probation

4    department.  If you are placed on supervised release and

5    thereafter violated any condition of your supervised release,

6    the Court could revoke the term of supervised release

7    previously imposed and return you to prison without giving you

8    any credit for the time previously served on post-release

9    supervision.

10          In addition to these restrictions on your liberty, the

11   maximum possible punishment for the crime charged in Count One

12   includes financial penalties.  The maximum allowable fine is

13   $250,000 or twice the profits of the criminal activity or twice

14   what someone other than yourself lost because of the criminal

15   activity, whichever is greater.

16          You will also be required to pay restitution to any

17   victims of the crime in an amount that the Court decides is

18   required to compensate them for any injuries.

19          In addition, by pleading guilty, you will admit to the

20   forfeiture allegations in the indictment, and you will agree to

21   forfeit the sum of $6.9 million, $6,900,000, in U.S. currency,

22   which is deemed to be property within the scope of 18 U.S.

23   Code, Section 981(a)(1)(C) and 28 U.S. Code, Section 2461.

24          I am also required by law to tell you that there is an

25   additional special assessment of $100 which is required to be

1    imposed on each count of conviction.

2           Now, you told me a moment ago that you are a U.S.

3    citizen.  Nonetheless, I am required to tell you that if you

4    were not a U.S. citizen or if it should turn out that you are

5    not a U.S. citizen, your guilty plea could also have adverse

6    consequences for your ability to remain in or return to the

7    United States, including removal, deportation, denial of

8    citizenship, or denial of admission into the U.S. in the

9    future.

10           Your removal or deportation could be mandatory.  If

11    that did happen, you would still be bound by your guilty plea.

12    You would not be able to withdraw it regardless of any advice

13    you received from your counsel or others regarding the

14    immigrations consequences of your plea.

15           Do you understand that?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  I am told there is a written agreement

18    between you and the government which is being handed to me now.

19    It is dated October 2 of this year.  It is addressed to your

20    lawyer, and it appears to have your signature on the last page,

21    which I am holding up.

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Did you sign this plea agreement today?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  Did you read it before you signed it?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  Good.

3           Did you discuss it with your attorney?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Do you understand its terms?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Has anyone promised you or offered you

8    anything in order to get you to plead guilty, other than what

9    is in your written plea agreement?

10          THE DEFENDANT:  No, ma'am.

11          THE COURT:  It appears that you and the government

12   have reached agreement regarding the appropriate calculation of

13   your sentence based on a part of our law known as the

14   sentencing guidelines.

15          And it says on page 2 of your plea agreement that the

16   appropriate guideline sentencing range for you is from 37 to 46

17   months, 37 to 46 months' imprisonment, and that the appropriate

18   monetary fine range is from $15,000 to $150,000.

19          Under this agreement, sir, neither you nor the

20   government is allowed to argue to the sentencing judge for a

21   calculation which is different from the one in the agreement.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you also understand that in this

25   agreement you have also limited your right to appeal in certain

1   respects from any sentence that may be imposed?

2         Specifically, do you understand that as long as the

3   district judge sentences you to a prison term of no longer than

4   46 months, any lawful sentence of supervised release, and a

5   fine no greater than $150,000, you are giving up your right to

6   challenge your sentence, whether by direct appeal, writ of

7   habeas corpus, or otherwise?

8         THE DEFENDANT:  Yes, your Honor.

9         THE COURT:  Do you understand that under the terms of

10  your plea agreement, even if you later learned the government

11  withheld from your counsel certain information that would have

12  been helpful to you in defending yourself at trial, you would

13  not be able to complain about that or withdraw your plea?

14        THE DEFENDANT:  May I just --

15        THE COURT:  Take a moment.

16        THE DEFENDANT:  Thank you.

17        (Pause)

18        THE DEFENDANT:  Okay, your Honor.  Thank you.

19        THE COURT:  Do you understand what I just told you?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you also understand that the terms of

22  your plea agreement, including any recommendation or

23  calculation relating to your sentence, are not binding on the

24  sentencing judge?

25        THE DEFENDANT:  Yes, your Honor.

1        THE COURT:  The sentencing judge can reject those

2    recommendations or calculations and could impose a more severe

3    sentence than you expect without permitting you to withdraw

4    your plea of guilty.

5        The sentencing judge is required to make their own

6    independent calculation of the appropriate sentencing range

7    under the guidelines, and she will also have the discretion to

8    give you a sentence above or below that range.  If she goes

9    above, she can go up to the maximum sentence that I told you

10   about earlier.

11       In addition to the guidelines and possible departures

12   from the guidelines, the sentencing judge will also consider

13   all of the factors set forth at 18 U.S. Code, Section 3553(a).

14   In other words, she will pronounce whatever sentence she

15   believes is the appropriate sentence for you, even if it's

16   different from the one set forth in your plea agreement.

17       Do you understand that?

18       THE DEFENDANT:  Yes, ma'am.

19       THE COURT:  The Court will also consider a presentence

20   report prepared by the probation department in advance of your

21   sentencing.  You and the government will have an opportunity

22   ahead of sentencing to challenge the facts which are reported

23   by the probation officer.

24       Do you understand there is no parole in the federal

25   system?

1          (Pause)

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  You understand that now.

4          THE DEFENDANT:  Yes.

5          THE COURT:  If you are sentenced to prison, you will

6     not be released on parole.

7          Before I go on, let me ask counsel for the government

8     and defense counsel if there are any other provisions of the

9     plea agreement you'd like me to go over with Mr. Simmons.

10         MR. QUIGLEY:  No, your Honor.

11         MR. MIEDEL:  Your Honor, just to be clear, while the

12    parties have stipulated to the guideline range calculation,

13    either party under the terms of the agreement is permitted to

14    seek a sentence outside of that range.

15         THE COURT:  Under 18 U.S. Code, Section 3553(a).

16         MR. MIEDEL:  Correct.

17         THE COURT:  Correct.

18         Anything further?

19         MR. MIEDEL:  No.

20         THE COURT:  One last time, Mr. Simmons, because this

21    is an important question, other than what is in the plea

22    agreement itself, have any promises been made to influence you

23    to plead guilty?

24         THE DEFENDANT:  No, ma'am.

25         THE COURT:  Have any promises been made concerning the

1    actual sentence that you will receive?

2           THE DEFENDANT:  No, ma'am.

3           THE COURT:  Now that you have been advised of the

4    charges against you, the possible penalties that you face, and

5    the rights that you are giving up, is it still your intention

6    to plead guilty to Count One of the superseding indictment?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Is your plea voluntary and made of your

9    own free will?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Mr. Simmons, with respect to Count One,

12   how do you plead?  Guilty or not guilty?

13          THE DEFENDANT:  Guilty, your Honor.

14          THE COURT:  Please tell me in your own words what you

15   did that makes you guilty of the crime charged in Count One.

16          THE DEFENDANT:  In 2016 in the Southern District of

17   New York, I agreed with another person to commit a fraud.

18   Specifically, I, along with another person, told investors that

19   their money would be invested without it being commingled with

20   other peoples' capital, which wasn't true.  I made other

21   representations that were not true.

22          I misused the investors' funds for personal purposes

23   without her knowledge.  Some of my conversations took place

24   over the phone or by email.  I do recognize that I failed to

25   protect my client, and what I did was wrong.

1                   THE COURT:  Thank you, Mr. Simmons.

2                   Did your attorney help you prepare the testimony that

3      you just gave?

4                   THE DEFENDANT:  Yes.  He made it a lot more clear.

5      I'm sorry.

6                   THE COURT:  That's fine.

7                   Do you adopt those words as your own?

8                   THE DEFENDANT:  Yes, your Honor.

9                   THE COURT:  Is everything you just told me true?

10                  THE DEFENDANT:  Yes, your Honor.

11                  THE COURT:  Did you know at the time you did those

12     acts that what you were doing was wrong?

13                  THE DEFENDANT:  Yes, your Honor.

14                  THE COURT:  Mr. Quigley, do you believe that is a

15     sufficient factual predicate for a guilty plea?

16                  MR. QUIGLEY:  Yes, your Honor.

17                  THE COURT:  Would you like me to ask the defendant any

18     further questions?

19                  MR. QUIGLEY:  No, your Honor.

20                  THE COURT:  Does the government represent that it has

21     sufficient evidence to establish guilt beyond a reasonable

22     doubt at trial, and would you like to make a proffer?

23                  MR. QUIGLEY:  Yes, your Honor.  The government's

24     evidence would include emails between or involving the

25     defendant and his coconspirators and victims of the fraud;

 1   testimonial evidence from victims of the fraud and potentially

 2   a cooperating witness; and other documentary evidence,

 3   including bank records showing the movement of funds from

 4   investors and among the defendants.

 5            THE COURT:  Thank you.

 6            Mr. Simmons, on the basis of your responses to my

 7   questions and my observations of your demeanor, I find that you

 8   are competent to enter a guilty plea.  I am satisfied that you

 9   understand your rights, including your right to go to trial;

10   that you are aware of the consequences of your plea, including

11   the sentence that may be imposed; that you are voluntarily

12   pleading guilty; and that you have admitted that you are guilty

13   as charged in Count One of the superseding indictment.  For

14   these reasons, I will recommend that the district judge accept

15   your plea.

16            I will ask the government to order a copy of the

17   transcript and submit it to Judge Woods together with any

18   additional paperwork so that she can act on my recommendation.

19            Has she set a sentencing date?

20            MR. QUIGLEY:  She has not, your Honor.  We request a

21   control date three months out, maybe January 31.

22            THE COURT:  The defendant is not in custody; correct?

23            MR. QUIGLEY:  He is not.

24            THE COURT:  Is there a reason that you need three

25   months?  We ordinarily give a six-month control date for a

 1   defendant who is not in custody.

 2          MR. MIEDEL:  Did you say six?

 3          MR. QUIGLEY:  We can just write the judge and ask for

 4   a date.

 5          THE COURT:  Whichever you want.

 6          MR. QUIGLEY:  When we ask her to accept the plea,

 7   we'll ask her to set a sentencing date.

 8          THE COURT:  We'll set a control date for January.

 9   January 29 will be the control date.

10          MR. QUIGLEY:  Thank you, your Honor.

11          THE COURT:  I will direct that a presentence report be

12   prepared.

13          Can you deliver the case summary, Mr. Quigley, within

14   the next two weeks for purposes of the presentence report?

15          MR. QUIGLEY:  Yes, your Honor.

16          THE COURT:  Mr. Miedel, will you be available with

17   your client for interview by the probation department within

18   the next two weeks?

19          MR. MIEDEL:  Yes.

20          THE COURT:  Thank you.

21          I don't know what the bail terms are, but are there

22   any objections to continuing them?

23          MR. QUIGLEY:  No, your Honor.

24          THE COURT:  So, Mr. Simmons, all of the conditions on

25   which you are released up until now continue to apply, and as

1    I'm sure you understand, a violation of any of those conditions

2    can have serious consequences, including revocation of bail or

3    prosecution for bail jumping.

4              Do you understand that?

5              THE DEFENDANT:  Yes, ma'am.  I do.

6              THE COURT:  Anything further from the government?

7              MR. QUIGLEY:  No, your Honor.  Thank you.

8              THE COURT:  Anything further from the defense?

9              MR. MIEDEL:  No, your Honor.  Thank you.

10             THE COURT:  Thank you, gentlemen.

11             (Adjourned)